Good morning, Your Honors. May it please the Court and Counsel. My name is John Doyle and I represent Michael Loza, a man who in 2007 bought a cancer policy, a small, what is often referred to in the industry as a nickel-dime policy, that you pay a few cents or so out of each paycheck each month. He bought this policy after learning about it by interpreting for an all-state agent who was selling to people who had English as a second language. After learning about it and after knowing that his sister-in-law essentially had died of cancer the year before, he and his significant other decided that they wanted to buy an insurance policy to protect against cancer. Michael, on that policy and on that form, wrote down the name of his doctor, the last date he had seen his doctor, his doctor's address, and his phone number. Unfortunately for Michael, in July of that year he was diagnosed with prostate cancer. And the issue became an issue when the insurance company decided to rescind the policy based on ARS Section 20-119, which is the rescission statute in Arizona. The district court in this matter, after we litigated it, found on the basis that there was a basis for summary judgment in favor of the defense, the insurance company in this case, on the basis that when a prostate PSA, prostate-specific antigen test, was in fact a diagnostic test for cancer. And as such, although there had been cross motions filed for summary judgment, denied our cross motion, which where we asked for breach of contract on two basis, two bases. So let me go into what we are looking at, Your Honor, and what we hope to achieve. We are asking the Court at this time to reverse and remand the Court's decision and in fact set this case back with direction of the Court to grant our motion for summary judgment and set this matter for trial on the issues of bad faith. Why should we have one on our breach of contract? One, let's go to the issue of waiver. For a period of 17 months after the policy was rescinded, Allstate, who is the owner of American Heritage Life, AHL, took money from my client's check while he was under the impression, at one point at least, that they were reviewing his claim. Allstate took the position, American Heritage Life I should, took the position that this was just merely an accident, even though when they reviewed his policy during the year, they increased his premium. Even through litigation in this case, they continued to take money from his check. A man who is a simple meat cutter and works in a cafeteria. Did they notify him that they were increasing his premium? There is no notification of it, Your Honor, whatsoever. They just sent a notice to the bank or to the employer to increase the? As far as we know, that's exactly what happened. There has been no documentation otherwise. Not only did they continue during the course of litigation, but when we sent them our second supplemental disclosure and told them about it, they in fact continued for three months after that period to continue to take money from the account. Didn't they tell him they were going to reimburse him once they denied his claim, they were going to reimburse him all his premium payments? They didn't reimburse him in this case. But didn't they tell him they were going to? Yes. They wrote him a letter. They did. And they did after 17 months after the rescission. But it wasn't a complete reimbursement because it didn't include the interest that he should have got on the money as well. Maybe, you know, what I think is the more interesting question here is whether or not the, his answer to the question, you know, question six. Yes. And let me then go to that question, which was the second basis. A PSA test, a prostate-specific antigen test, is not a diagnostic test for cancer. The only evidence in this case, two doctors, both treaters of him, both said specifically it is not a diagnostic test for cancer. And Dr. Ramach, his own physician, when asked the question, had you been asked to answer this question after having taken a PSA, how would you have answered it? His answer was no, I have not had a diagnostic test for cancer. So what do you understand? Is it your position that the term diagnostic test is ambiguous? Not only that it's ambiguous, Your Honor, but it's used as a weapon against insureds. And let me show you. How should a reasonable insured understand that term? Well, let's just put it this way. If Michael had filled out the form, which he didn't, it was filled out between his girlfriend and Judith Biggs, an all-State representative, which they brought Michael. My question to you is if you look at that term, diagnostic test, what does that And I was getting to that. Had Michael read it and called his doctor on the phone and said to him, have I had a diagnostic test for cancer, his own doctor would have said no. So what is it supposed to mean? I don't know. A PSA test can be part of the diagnostic process. But it's no different than a doctor putting a stethoscope on your chest and telling you to cough. Okay. Let me ask you this. The policy didn't define the term diagnostic, correct? Correct. Okay. So what does Arizona law tell us to do in interpreting terms in an insurance policy when there isn't a specific meaning given to the term within the policy? The case law that we have cited to the Court in this case says specifically where there is an ambiguity, it is construed against the insurer. They wrote the policy. So how would one generally interpret the term diagnostic? Well, to interpret the term diagnostic, Your Honor, it just doesn't make sense. Let me put it to you. Let me be even more basic. What is the dictionary definition of diagnostic? Okay. And if we want to go to the dictionary definition that the judge used, we can sit and use that because it says it specifies or delineates. This test doesn't specify you have cancer. It doesn't delineate. But let's take it to another level in this case. They deny a policy because a man has had a PSA. They told us they would deny a policy if a woman had had a mammogram. Mammograms don't tell you you have cancer. But flip it the other way. Supposing I bought this policy and six months later I take a PSA that's 14. Do they immediately start paying benefits? No. Their policy says they pay their benefits upon your diagnosis of cancer. They didn't have it. I mean, if they would have to pay everyone who said I had a PSA or I had a mammogram and they saw something, no, I'm not going to go get treatment, but you have to pay. As I understand it, wasn't there another basis for denying the claim? Well, the basis for the claim was basically that this was a fraudulent statement under 2119. And it's not, because the fraud in this case has to be shown with an intent to deceive. Michael did not know what a PSA was, did not know he had cancer. I thought they also denied on the ground that he was suffering from a preexisting condition. And they're saying that he already had cancer. Okay. That's not known. There was no evidence that he already had cancer. That issue wasn't addressed by the district court, correct? It was. It was addressed by the district court? It was not addressed by the district court. The district court still has to resolve that issue. And that is a question of fact. That has to be resolved at some point. But, Your Honor, the fact that the only medical evidence in this case is that it is not a diagnostic test means that we should have won on the breach of contract. All right. May it please the Court. Susan Freeman on behalf of American Heritage Life Insurance. A PSA test can be a simple screening test like baseline colonoscopy or a mammogram. But it can also be a diagnostic test, a test for the purpose of looking at symptoms and trying to diagnose the cause of the symptoms, trying to determine the reason for the symptoms and whether or not those symptoms are cancerous. And that's precisely what the test was for in this case. In this case, this is a definition in the policy? It is, Your Honor. In the policy? The policy does not specifically define. It says a diagnostic test. Are you currently undergoing any diagnostic test? And here he was currently undergoing them. Anybody that's 40 or over has pointed out repeatedly at the briefs, any male, every time they go in for an annual physical, which is recommended by insurance companies, a PSA test is going to be included, part of the blood work. They're going to check your cholesterol levels, your blood pressure, your weight and your height. They compare it to what it was the year before and look at your PSA test. Is every person who goes in for an annual physical over the age of 40 who gets this PSA test? No. Not going to be found to have lied on this application? We're not saying that, Your Honor. We're saying that in this instance, because he came in complaining of urinary problems. He had a general physical, though, as well. He had a general physical, but he came in complaining to the doctor of frequent urination, of a history of an enlarged prostate, and his father having died of cancer, of prostate cancer. So he came in with those symptoms. The doctor gave him a test, physically examined him, determined he had an enlarged prostate, and said, with your father's death of cancer, given your father's death of cancer and given your history and symptoms, I'm going to give you this test. So it's a fact-intense question as to whether he should have believed, he reasonably should have believed that this PSA test was a diagnostic test for cancer? I don't think it's quite that, Your Honor. Well, okay. Because the question is, as the Court said, whether a reasonable person would have believed. And the point is whether you are coming in with symptoms that are being presented. And here, you have not only symptoms and the PSA test, but he knew the PSA test was high, and he knew he had been referred to a urologist for further tests. Well, aren't those all facts which a trier of fact has to decide whether he reasonably should have known that this PSA test, which he states he didn't even know he had, was a diagnostic test because of his individual symptoms? Here, Your Honor, we have enough facts that are undisputed for summary judgment. Because he testified that he knew his PSA was high, and he was referred to a urologist. That's ER 34. He also testified? He didn't even know what a PSA test was. He didn't know what the numbers meant. And that his significant other is the one that took the steps to get the urologist. That further, that the doctor's office said there was no hurry, and waiting three months wasn't a problem. So all those are all facts which go way in favor of the insurance company, way in favor of the applicant. Isn't this a very factually intense question which a jury needs to decide? I don't think so, Your Honor. And I would look, Your Honor, to the Ely case from this court, which was decided on summary judgment, and where the court said that a pap smear that came out with abnormalities and where you had to have a further test of a biopsy to actually determine the cancer, that the pap smear was enough to be a diagnostic test for cancer. And I would also refer, Your Honor, to the Parkerson case, which happens to be from the Eastern District of Virginia. Judge Payne, yes. But that is also one where what you had was an initial test, and the insurance applicant was told you're going to need to take these further tests. And the doctor specifically said, I didn't want to scare him, so I didn't tell him, you know, be wary of this. I didn't try to alarm him. But I told him to take these further tests, and depending upon the test results, he would need to go to a further specialist. And that's what we have here. He was undergoing tests for cancer. Let me ask you this, and this comes up in many different areas of insurance cases. If you want to notify an applicant for insurance that a diagnostic test includes mammograms, PSAs, in the Judge Payne case, tests for colon cancer, all of these are tests which aren't immediately reflective of whether they have or they don't have. They are an initial step in a series of tests. Why don't you say so? Why don't you define the term instead of leaving it in diagnostic test, which brings you here, and it's not the first time that the insurance company has been defending an action or it happens on a recurring basis. Why not define the term in the policy? Three answers, Your Honor. Answer number one is that there are many kinds of diagnostic tests, and you can always have new diagnostic tests that people come up with and doctors come up with all the time. So if you try and list all of the tests, by the time you get a new policy, it may be out of date. Number two is that this particular brochure, the one that he, in fact, looked at and used to determine whether he would buy this policy, said, quote, PSA, PRIN, blood test for prostate cancer, unquote. So the brochure that he had did say the PSA test is a blood test for prostate cancer. And number three you can have a test that is just general screening, like the colonoscopy can just be a screening test that you have at 50, or it can be a test that your doctor prescribes for you to diagnose symptoms, and that's what we have here. If you take one or the other, like if you put on a blood pressure cuff, in some cases that might be a diagnostic test, but in other cases it might be just a routine screening thing, or some people do it every day, some people do it once a month. How can you decide on summary judgment that something is a diagnostic test just because one person thinks it is and another person thinks it isn't? The determinative question, Your Honor, is whether it is to diagnose symptoms. If you're coming in with symptoms, then it is diagnosing those. That's not what this question says, though. That's not what this question says. It didn't ask. Do you have any symptoms? No, it is are you. Do you have the following symptoms? It is a are you undergoing things. Have you had a PSA test? Have you had a mammogram? Are you undergoing a diagnostic test? This is a two-page application, and it doesn't list all of them. It did in the brochure, but the question is are you here to diagnose, and is a reasonable person going to understand that when I come in with symptoms and I complain to the doctor about them and the doctor says, take this test. Any diagnostic test for cancer. Right, and his doctor said he went for a physical. But he went for a physical complaining of symptoms. Complaining for what? He didn't know he had cancer. What he knew was that he had frequent urination. Just for cancer. Right. He knew he had frequent urination. He knew his father had died of prostate cancer. He didn't have that problem without cancer. But, Your Honor, what he knew was that he had these symptoms. Why didn't you just ask that question? What symptoms do you have? Do you have any of the following symptoms? It's a two-page questionnaire. That's right. And you made that decision to make it the two-page questionnaire, the insurance company. The insurance company made the decision to make this a short questionnaire to cover everybody and to have broad enough questions that people, this like the Ely case and like the Parkerson case is one where a reasonable person would understand diagnosis is I'm trying to diagnose symptoms. I'm trying to determine what these, what the cause of these symptoms are. And that's the dictionary definition of a diagnostic test. His doctors said that, too. Didn't he tell the agent that he had seen his doctor? Or didn't he put that on the form that he had recently seen his doctor? For his critical illness coverage. For the critical illness, he listed it. But he also said, I have not had any tests. And the only basis for him saying. Couldn't the insurance company just call up the doctor? Because there's no reason to. I've had an annual test. Call up the doctor. Get his report. Get his records. But the doctor, the insurance company is entitled to rely upon him saying, I've had no diagnostic test for cancer. It is entitled to rely. It's not entirely clear to me that a PS test, a PSA test is a diagnostic test for cancer. It is a test to determine, as he was told by his doctor, whether it is to determine to diagnose whether your symptoms are for an infection or diabetes or cancer. And with your father's history of cancer, we want to make sure you have this PSA test. And importantly, he filed his application after he admitted that he was told that it was high and that he was referred to a urologist. So he had that. And then he actually applied for increased cancer coverage just before his appointment with the urologist. And, in fact, it was that increased cancer coverage that caused the problem for the increased premiums because the initial policy was treated as being canceled and a new policy put in. And then when a refund was made, and he did get a refund when his policy was canceled, they had to reinstate it, reinstate the old policy so that they could process the refund. And then there was an error, a clerical error of them not terminating the policy again. So that's why he continued to have deductions of a few cents from his paycheck and why the increase came in because of the increased coverage. He did get a refund immediately. And then as soon as we found out about it, he got a further refund. It's not a promise of a refund. No, he did get a refund. He did get an actual refund initially when the policy was terminated. And then because of that glitch, there were further deductions from his paycheck. So he got a second refund once we found out about the problem. Well, that's sort of like using a stopple as a sword instead of a shield. And it's really inappropriate in this case. There was no intentional knowing waiver of a known right. We've all been trial judges, and we all share one thing with insurance companies. We look for the first door out. But summary judgment might be a little premature where you have a clause in the application that is subject to two meanings. Well, Your Honor, when you are coming to diagnose symptoms, it is a diagnostic test under any dictionary definition, and even his doctors, and if you look at this Court's decision in Ely, and if you look at the Parkerson case, those are cases that are very similar. A pap smear can be a diagnostic test. And here, the PSA test can be a diagnostic test. I suppose. I'm sorry? A blood pressure cuff can also be a diagnostic test. If you are coming in with a history of high blood pressure and the Court's trying to determine. Doesn't that tend toward ambiguity when you can have different meanings? You get two doctors who disagree on whether a certain procedure is a diagnostic test for a specific problem. That sounds like it's ambiguous on its face. They're all coming in and trying to – his doctors were saying this is part of the diagnostic process. This one test in and of itself is not enough. Just like a blood test or a blood pressure cuff is not enough in and of itself to diagnose. It's not the final thing like a biopsy. But it is one of the diagnostic tests to narrow the scope and determination of the cause of these symptoms, whether it is cancer as opposed to a mere infection. And because of that, a reasonable person would know that this is a diagnostic test. Let me just – your time is about up, and I just want to ask you, suppose, hypothetically speaking, we didn't agree with your position and we determined that it had to be reversed. What happens on remand? Where is the case? What's your understanding? Right now we have cross motions for summary judgment. This was determined on summary judgment, and it was determined, Your Honor, with the Court not ruling on the alternative grounds. There's a footnote in the opinion that says the Court didn't rule on the alternative grounds, but this Court could and should as well look at the alternative grounds. But we're a court of review. We're not a district court. That's true, but the Court can uphold the judgment below on the alternative grounds. This particular policy said a preexisting condition is one where you have a physical condition for which medical advice was received during the 12 months prior. Here you have the physical condition of urination problems in large prostate history of prostate cancer for which medical advice, going in and seeing his primary physician and getting the test, was within the 12 months before he applied. So you do fit within this definition of preexisting condition, and that was presented to the Court and argued below as the alternative grounds, and as I said, the Court determined not to address that. It could, you could, and we would urge you to go ahead and do that. Thank you. Roberts. Specifically with regard to the issues of what could have been done with the form, as she said, we asked, Counsel, we asked broad questions. We've all filled out applications with insurance companies that go far beyond what is there. History of smoking, history of heart pain, chest pain, history of being able to breathe. That's not on these forms. This is specifically made to be brought and for it to be made to have, to set up post claims underwriting. We wait until you make the CHIC claim, then we go back. This was not an employer-provided ERISA plan. It was not an employer-provided plan. The employer allowed people to come in and sell all kinds of different policies in their place. Our client specifically put on the form, which was the application for both policies he bought, one for the critical illness that does not cover anything here, and one for the cancer, his doctor's name, address, and phone number. One phone call. That's all the underwriting they would have needed if a PSA was that important to them. But the evidence in this case, again, is that a PSA, and according to the American Urological Society, is not diagnostic. For cancer. For cancer. If you have a PSA of 15, you may or may not have cancer. If you have a PSA of .5, you may or may not have cancer. And in fact, it is their position now that doctors really even shouldn't take these PSA tests until they have a reason to. Because there's too many false positives and too many people being scared for no reason at all. Mr. Lowe's in this case, and there is no evidence whatsoever that he knew anything about what a PSA was. That was the testimony. It was very clear. And even if they put something in their brochures which are not part of the policy, that a PSA is the test for cancer, that's just plain false. And they know it. And when they were talked about it, when we took their depositions of their people back in Florida, not one of them had ever spoken to a doctor to ask them whether or not a PSA was, in fact, a test for cancer or a diagnostic of cancer. They have a doctor on staff. No one had ever talked to him. They couldn't point us to one document. One document anywhere that they had ever read. We asked them, have you checked on the web? We have, and I think we saw it, but I can't tell you where. Who are you referring to now? I'm talking to the agents that denied the claims, the claims agents for American Heritage Life, all employees of Allstate. Unless the Court has any further questions, I believe I'm done. Thank you, Your Honor. Thank you. Thank you. That ends our session for the day.
judges: O'grady, Goodwin, Paez